UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/24/2023
```

PAUL V. CORTEZ,

                           Plaintiff,

    -against-

GOV. ANDREW M. CUOMO, et al.,

                           Defendants.

No. 21-cv-0126 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* incarcerated Plaintiff, Paul V. Cortez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Defendants New York State Governor Kathy Hochul, Acting Commissioner of New York State Department of Corrections and Community Supervision ("DOCCS") Anthony J. Annucci, Acting Superintendent James Johnson of Green Haven Correctional Facility ("Green Haven"), DOCCS Deputy Commissioner of Programs Jeff McCoy, former DOCCS Deputy commissioner of Programs James O'Gorman, and Green Haven Deputy Superintendent of Programs Marilyn Kopp (together, "Defendants").[1] Plaintiff seeks injunctive relief to prevent any future COVID-19 pandemic related suspensions of religious programs within DOCCS's facilities, which he argues are in violation of his rights under the Free Exercise Clause of the U.S. Constitution's First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* (*See* ECF No. 2, the "Complaint" or "Compl.")[2]

---

[1]     On May 2, 2022, the Court dismissed claims against former Governor Cuomo in his individual capacity. (ECF No. 47.) Governor Kathy Hochul was substituted in for the claims against former Governor Andrew Cuomo in his official capacity. Under Fed. R. Civ. P. 25(d), the current officeholder, Governor Kathy Hochul, is automatically substituted as an official capacity defendant, and she is referred to here as the Governor defendant.

[2]     In his *pro se* Complaint, Plaintiff lists the following under the "statement of claims": (1) religion; (2) access to the courts; (3) search and seizure; (4) free speech; (5) false arrest; (6) malicious prosecution; (7) due process; (8) excessive force; (9) denial of medical treatment; (10) equal protection; (11) failure to protect; and (12) right to counsel. (*See* Compl. at 4.) However, Plaintiff's Complaint explicitly states that his Section 1983 claim is based on violation of the Free Exercise Clause of the First Amendment and RLUIPA. (*Id.* at 5.) Even when construing Plaintiff's

Now before the Court is Defendants' motion for summary judgment seeking dismissal of Plaintiff's complaint in its entirety.  (ECF No. 70.)  For the reasons articulated below, the Court GRANTS the motion and dismisses the Complaint.

## BACKGROUND

The facts below are taken from the parties' Rule 56.1 statements, affidavits, declarations, and exhibits, and are not in dispute except where so noted. All rational inferences are drawn in Plaintiff's favor.

Plaintiff is an incarcerated individual who has been in New York State Department of Corrections and Community Supervision ("DOCCS") custody since 2007.  (56.1 ¶ 1.)  In November 2015, Plaintiff was incarcerated at Green Haven.  (*Id* ¶ 1.)  On or about May 23, 2022, Plaintiff was transferred to Sing Sing Correctional Facility ("Sing Sing") in order to complete a religion-focused master's degree program offered by the New York Theological Seminary ("NYTS").  (*Id.* ¶ 18.)

Beginning in March 2020, DOCCS began to implement measures to reduce the risk of infection during the COVID-19 pandemic ("COVID").  (*Id.* ¶ 5.)  Measures taken included reducing interpersonal contact by placing restrictions on the presence of non-residents and non-essential personnel in facilities, as well as reducing movement and gatherings of large numbers of people within facilities.  (*Id.*) Other measures taken in response to the pandemic included suspension of all congregate religious services and special events, religious or secular.  (*Id.* ¶ 6.) Incarcerated individuals continued to be permitted to practice their religions privately, through

---

allegations under the most liberal reading, Plaintiff's allegations also only address his claims under the Free Exercise Clause of the First Amendment and RLUIPA.  The Court therefore finds that Plaintiff only states claims under the Free Exercise Clause of the First Amendment and RLUIPA in his Complaint.

private prayer, observation of holidays and rituals, possession of religious literature and articles, religious diet and meals, correspondence and telephone calls.  (*Id.* ¶ 9.)

In addition, on March 20, 2020, DOCCS directed corrections facilities to continue to permit religious study groups, subject to COVID-related social-distancing restrictions and 50% capacity rules.  (*Id.* ¶ 10; ECF No. 74 (Ahmed Decl.) ¶ 14.)  The general suspension of in-person group activities was gradually lifted from Summer 2020 to Spring 2021.  (*Id.*) The direction to continue religious study groups, however, was inadvertently not carried out at Green Haven Correctional Facility, where Plaintiff formerly resided, until religious study groups were resumed there in May 2021.  (56.1 ¶ 11.)  The direction to continue religious study groups was carried out at Sing Sing, where Plaintiff was transferred to in Spring 2022.  (*Id.* ¶ 12.)

Religious services were resumed in DOCCS facilities at 50% of room capacity effective February 22, 2021.  (56.1 ¶ 13.)   Facilities were required to submit a plan that maintained social distancing and a high level of sanitation.  (56.1 ¶ 13.)   However, because of spikes in COVID infections, DOCCS paused program activities, including religious services and religious study groups, from on or about October 4 through on or about October 24, 2021, and again from on or about January 3 through on or about February 9, 2022.  (56.1 ¶ 15.)   There have been no such suspensions since February 9, 2022.  (*Id.*)

Plaintiff is registered as a Roman Catholic under DOCCS rules.  (56.1 ¶ 16.)   While religious services and religious classes were suspended at Green Haven, Plaintiff read the Bible, prayed, and meditated.  (56.1 ¶ 17.)   Plaintiff could also meet with the deacon of the Catholic congregation at Green Haven, who returned to the facility in June 2020.  (*Id.*)  c  (*See* Pl.'s Opp., Exh. A.)

On May 23, 2022, Plaintiff was transferred from Green Haven Correctional Facility to Sing Sing in order to participate and enroll in a religion-focused master's degree program offered by the NYTS only at Sing Sing.  (56.1 ¶ 18.)   Although Plaintiff attended services regularly during his first month at Sing Sing, after June 22, 2022, he was only scheduled to attend services on July 27, September 14, and October 12, 2022, at which time he appears to have resumed more regular attendance.  (56.1 ¶ 19.)

Mr. Mohammad Ahmed, the Assistant Director of Ministerial Service for DOCCS, declares that DOCCS's policies regarding religious services and religious study groups during the pandemic were not made in consultation with the Governor's Office, which did not direct DOCCS to follow a particular policy regarding them.  (56.1 ¶ 31; Ahmed Decl., ¶ 32.)

Plaintiff commenced the instant lawsuit on January 6, 2021, when he was still residing at Green Haven.  (*See* Compl.)  Defendants filed an answer to the complaint on June 7, 2021. (ECF No. 21.).  The case proceeded to discovery before Magistrate Judge Paul E. Davison.  (ECF No. 31.)  Discovery was completed on May 2, 2022.  (*See* Minute Entry, May 5, 2022.)  On June 9, 2022, the Court granted Defendants leave to file their motion for summary judgment.  (ECF No. 49.)  The motion was fully briefed as of February 2, 2023.  (ECF No. 70.)  Defendants included a Local Civil Rule 56.2 statement, as required under the Southern and Eastern Districts of New York local rules when filing summary judgment motions against *pro se* litigants.  (ECF No. 71.)

## LEGAL STANDARD

### I.    Fed. R. Civ. P. 56

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears

the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; a*ccord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196

F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

When dealing with summary judgment motions in *pro se* cases, courts in this Circuit must "read the pleadings of a *pro se* plaintiff liberally and "raise the strongest arguments that they suggest." *McPherson v. Coombe*, 17 F.3d 276 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 214 F.3d 787, 790 (2d. Cir. 1994)). Pleadings drafted by *pro se* plaintiffs moving for summary judgment are not held to the same "stringent standards" as "formal pleadings drafted by lawyers." *Shariff v. Poole*, 689 F.Supp.2d 470, 476 (S.D.N.Y. January 20, 2010). On the other hand, *pro se* plaintiffs cannot overcome a motion for summary judgment by simply making "bald" assertions that are unsupported by the evidence. *Id.*

## DISCUSSION

Plaintiff's allegations and the Court's review of the records demonstrate that Plaintiff's claims are based on alleged violations of his religious rights under the Free Exercise Clause of the First Amendment and the RLUIPA: (i) that occurred while he was at Green Haven between March 2020 to March 23, 2022; and (ii) that may occur in connection with any future suspension of religious services, whether at Sing Sing, Green Haven, or any other facility that he may be transferred to. Plaintiff only seeks injunctive relief, and does not seek any monetary damages. (*See* Compl. at 7.) For the following reasons, the Court finds that Plaintiff's claims arising out of the interruptions of religious services he previously experienced while at Green Haven are mooted, and his claims directed at any future interruption of religious services are unripe for judicial review.

### 1. Mootness as to Green Haven Defendants

Defendants seek dismissal of the Complaint as to Defendants Kopp and Johnson (the "Green Haven Defendant") on the basis that the claims against them are mooted.  (See ECF No. 73 ("Defs.' Mem.") at 7; ECF No. 80 ("Defs.' Reply") at 2.)  Under the "case or controversy" requirement of Article III of the Constitution, "at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001). A case is moot, and therefore no longer a case or controversy for the purposes of Article III, "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (internal quotation marks omitted). When a case becomes moot, a district court no longer has subject matter jurisdiction, *see Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994), and courts may consider whether they have subject matter jurisdiction *sua sponte* at any stage of the litigation, *see Fed. Dep. Ins. Corp. v. Four Star Holding Co.*, 178 F.3d 97, 100 n.2 (2d Cir. 1999).

As the parties do not dispute, Plaintiff was transferred from Green Haven over to Sing Sing on or about March 23, 2022.  (56.1 ¶ 18.) The Court therefore agrees with Defendants that Plaintiff's claims must be deemed moot as to the events that occurred at Green Haven.  "In this Circuit, . . . a prisoner's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Pryor v. Doe*, No. 22-CV-162 (NSR), 2022 WL 1488428, at *3 (S.D.N.Y. May 11, 2022); *see also Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").

Plaintiff contends that his claims are not moot because they "affect[] his religious rights in every facility, not just Green Haven."  (ECF No. 66 ("Pl.'s Opp.") at 9.)  However, Plaintiff lacks standing to make claims regarding religious suspension at other DOCCS facilities other than at Green Haven and Sing Sing, because he does not purport to have resided in, much less experienced, any harm at other facilities, nor is it certain that he will be transferred to a third facility.  *See Frey v. Bruen*, No. 21 CV 05334 (NSR), 2022 WL 522478, at *4 (S.D.N.Y. Feb. 22, 2022) ("To have standing to seek injunctive relief, a plaintiff must establish a "real or immediate threat" of injury"); *see also Izquierdo v. Panera Bread Co.*, 450 F.Supp.3d 453, 460 (S.D.N.Y. 2020) ("Mere 'allegations of possible future injury are not sufficient'; the 'injury must be certainly impending.'") (quoting *Daniel v. Tootsie Roll Indus., LLC*, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *6 (S.D.N.Y. Aug. 1, 2018)).  In addition, as a *pro se* litigant, he may not purport to represent the interests of other incarcerated individuals at those other facilities.  *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."); *Iannaccone v. Law.*, 142 F.3d 553, 558 (2d Cir. 1998) ("because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him.").

Plaintiff also contends that the claims against the Green Haven Defendants are not mooted because he signed an agreement to return to Green Haven after completion of his master's degree program in the NYTS, and he is bound to return to Green Haven at any time.  (Pl.'s Opp. at 9 (citing Cortez Decl., Exh. B)).   However, Defendants present a declaration by Deputy Superintendent of Programs. Elaine Velez, who points out that the agreement which Plaintiff signed is between himself and the NYTS, and that the agreement "does not require or predict DOCC's transfer of Plaintiff to Green Haven or any other facility."  (*See* Velez Reply. Decl. ¶ 3.).

8

While Plaintiff indicated in his opposition that he has completed the seminary program as of December 27, 2022 (*see* Pl.'s Opp. at 9), Plaintiff remains at Sing Sing as of the date of this instant Order and Opinion.  Therefore, because it is unclear if and when Plaintiff will return to Green Haven, the Court deems Plaintiff's claims against the Green Haven Defendants as mooted.[3]

**2.   Claims Based on Future Suspensions of Religious Services**

Notably, Plaintiff provides no allegations nor any evidence that there are any current suspensions of religious programs at Sing Sing, where he currently resides, or that he experienced suspension of religious programs while at Sing Sing.  For this reason alone, the Court must dismiss Plaintiff's claims.  *See Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021) ("Federal judges decide only live controversies that will have a real effect on real parties in interest.") (citing U.S. Const. art III, §§ 1-2 and *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013)).

Plaintiff does not argue that there have been interruptions of religious services during his time in Sing Sing, but he instead focuses his claims on the fact that future interruptions could occur.  (*See* Pl.'s Opp. at 20.)  Defendants do indeed state that "future interruption in programs, including religious services and classes, is within the realm of possibility, [but] whether it occurs, and the duration and the form it may take is speculative."  (Def.'s Reply at 10; *see also* Ahmed Decl. ¶ 30 ("Although it is DOCCS's intent not to suspend religious services and religious study groups except as a last resort, the possibility of future health emergencies necessitating their suspension, along with secular programs, cannot be eliminated.  DOCCS will suspend services is when the condition is dangerous imminent emergency situation [sic].").

---

[3]   Notably, Plaintiff does not raise any claims for damages based on past harm to his religious rights, and only seeks injunctive relief to prevent future violations of his religious rights.

Courts have noted that "injunctive relief is still called for [where] the applicants remain under a constant threat ... [of being] bar[red] ... from attending services before judicial relief can be obtained." *Floyd v. Filipowski*, No. 21-CV-4096 (NSR), 2022 WL 2657173, at *4 (S.D.N.Y. July 8, 2022) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, U.S., —— U.S. ——, 141 S. Ct. 63, 208 L.Ed.2d 206 (2020).  Here, the parties agree that it is possible that interruption of religious program may occur in the future in response to COVID-19 related emergencies. Nonetheless, the actual measures that would be taken in the event of future interruptions to religious services, such as the number of days of suspension of religious services or the types of services that are suspended (*i.e.* religious mass or study groups), is unknown.

The record does not show any protocol or policy document indicating which religious programs would be interrupted in the event of COVID-19 infection surges, or the magnitude of such interruptions.   Instead, the record shows that the level of restrictions imposed depends on the level of threat that DOCCS perceives at the time of the COVID-19-related emergency.   For example, religious programs were temporarily paused because of surges in COVID-19 infections for three weeks in October 2021, but they were interrupted for five weeks starting in January 2022. (*See* 56.1 ¶ 15.)  Program pauses on those two occasions included interruption of religious services and religious study groups.  (*Id*.)

Without knowing what future suspensions would look like, the Court cannot assess whether such suspensions would violate the RLUIPA or the Free Exercise Clause.   In order to find a violation under the RLUIPA, the Court would need to assess whether the government imposed "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," and would also need to assess whether "the government demonstrate[s] that the imposition of the burden on that person" is both

"in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." *Amaker v. Lee*, No. 13-CV-5292(NSR), 2019 WL 1978612, at *16 (S.D.N.Y. May 3, 2019) (citing 42 U.S.C. § 2000cc-1(a)). Similarly, to assess Plaintiff's Free Exercise Clause claim, the Court must analyze whether Plaintiff "demonstrate[s] that he or she has a sincerely-held religious belief which was substantially burdened by the defendants' conduct and that the defendants' conduct was not reasonably related to some legitimate penological interest." *Amaker v. Lieberman*, No. 13-CV-5292 (NSR), 2023 WL 2751642, at *5 (S.D.N.Y. Mar. 31, 2023) (citing *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 586 – 87 (S.D.N.Y. 2015). As part of the Free Exercise Clause analysis, the Court must evaluate "whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006)

The Court therefore finds that Plaintiff's claim at this time are unripe. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, No. 20 CIV. 1399 (NSR), 2022 WL 2702447, at *13 (S.D.N.Y. July 12, 2022) (citing *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). "The ripeness requirement prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). The

Court cannot at this time decide on the constitutionality of any religious suspension that might be imposed as doing so would require speculation on the specific measures taken during suspensions of religious programs.[4]

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is GRANTED, and all claims in this action are DISMISSED against ALL Defendants. The Clerk of the Court is directed to terminate the motion at ECF No. 70.

The Clerk of the Court is directed to terminate the case and all Defendants, and to enter judgment in favor of the Defendants. The Clerk of the Court is respectfully directed to mail a copy of this Opinion and Order to Plaintiff at his address listed on ECF and show mailing on the docket.

Dated:    July 24, 2023                                        SO ORDERED:
          White Plains, New York

_____

NELSON S. ROMÁN
United States District Judge

---

[4]        The Court notes that the parties do not dispute whether or not Plaintiff adequately satisfied his obligation to exhaust his administrative remedies. Inmate plaintiffs are required to exhaust their administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") prior to initiating suit in federal court. *See* 42 U.S.C. § 1997e(a); *see also Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "Exhaustion serves myriad purposes, including limiting judicial interference in agency affairs, conserving judicial resources, and ... allow[ing] the agency to develop the factual record of the case." The Court notes that Plaintiff does not allege, nor does the record reflect, that any grievance was filed regarding suspension of religious programs at Sing Sing.